IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

KATHY A. SISSOM,                        )
                                        )
            Plaintiff,                  )
                                        )
vs.                                     )        Case No. CIV-11-289-F
                                        )
MICHAEL J. ASTRUE, *Commissioner*       )
*of the Social Security Administration*,)
                                        )
            Defendant.                  )

## REPORT AND RECOMMENDATION

Kathy Sissom ("Plaintiff") brings this action pursuant to 42 U.S.C. § 405(g) seeking judicial review of the Defendant Commissioner's final decision denying Plaintiff's applications for disability insurance benefits and supplemental security income payments under the Social Security Act.  This matter has been referred to the undersigned Magistrate Judge for proceedings consistent with 28 U.S.C. § 636(b)(1)(B).  Upon review of the pleadings, the record ("Tr.") and the parties' briefs, the undersigned recommends that the Commissioner's decision be affirmed.

## Administrative Proceedings

Plaintiff initiated these proceedings by protectively filing applications seeking disability insurance benefits and supplemental security income payments in July, 2008 [Tr. 139 - 142, 143 - 148, and 218].  She alleged that the following conditions limit her ability to work: arthritis in her neck, back, right shoulder, and left hip; left hand carpal tunnel syndrome; a right arm injury; a right leg injury; "right arm damage due to three mini

strokes"; right knee surgery; "damage to sensation nerve"; cartilage damage; diabetes; a right knee that needs to be replaced; asthma; high blood pressure; and, "heart."[1] [Tr. 222]. She maintained that these conditions result in numbness; the inability to write, lift, bend, carry, stand, or walk for long periods; increased pain with increased activity; fatigue; and, "problems with hypertension and diabetes," all of which became disabling as of September 30, 2004. *Id.* Plaintiff's claims were denied and, at her request, an Administrative Law Judge ("ALJ") conducted an October, 2009 hearing where Plaintiff, who was represented by a Professional Social Security Disability Representative [Tr. 128], and a vocational expert testified [Tr. 24 - 60]. In his November, 2009 decision, the ALJ found that Plaintiff retained the capacity to perform her past relevant work as a housekeeper and a cashier/checker and, accordingly, was not disabled within the meaning of the Social Security Act [Tr. 11 - 22]. The Appeals Council of the Social Security Administration declined Plaintiff's request for review [Tr. 1 - 4], and Plaintiff subsequently sought review of the Commissioner's final decision in this court.

**Standard of Review**

This court is limited in its review of the Commissioner's final decision to a determination of whether the ALJ's factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied. *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citations and quotations omitted). Nonetheless, while this court

---

[1]Unless otherwise indicated, quotations in this report are reproduced verbatim.

can neither reweigh the evidence nor substitute its own judgment for that of the ALJ, the court's review is not superficial.  "To find that the [Commissioner's] decision is supported by substantial evidence, there must be sufficient relevant evidence in the record that a reasonable person might deem adequate to support the ultimate conclusion." *Bernal v. Bowen,* 851 F.2d 297, 299 (10th Cir. 1988) (citation omitted).  "A decision is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Id.* at 299.

## **Determination of Disability**

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C.§§423(d)(1)(A).  The Commissioner applies a five-step inquiry to determine whether a claimant is disabled. *See* 20 C.F.R. §§404.1520(b)-(f), 416.920(b)-(f); *see also Williams v. Bowen*, 844 F.2d 748, 750-752 (10th Cir. 1988) (describing five steps in detail).  Under this sequential procedure, Plaintiff  bears the initial burden of proving that she has one or more severe impairments. 20 C.F.R. §§ 404.1512, 416.912; *Turner v. Heckler*, 754 F.2d 326, 328 (10th Cir. 1985). Then, if Plaintiff makes a prima facie showing that she can no longer engage in prior work activity, the burden of proof shifts to the Commissioner to show that Plaintiff retains the capacity to perform a different type of work and that such a specific type of job exists in the national economy. *Turner*, 754 F.2d at 328; *Channel v. Heckler,* 747 F.2d 577, 579 (10th Cir.

1984).

**Plaintiff's Claims of Error**

Plaintiff's first claim of error is that "[t]he ALJ failed to apply the correct legal standard to evaluate and weigh the medical opinions of Plaintiff's treating orthopedic surgeon, Dr. Jameson." [Doc. No. 16, p. 12].  Next, she contends that "[t]he ALJ's RFC assessment is contrary to law, not supported by substantial evidence, and otherwise internally inconsistent."  *Id.* at 17.  Finally, it is Plaintiff's claim that "[t]he ALJ failed to make the legally required findings regarding the demands of Plaintiff's past relevant work and to make the type of function by function analysis on the record the law requires."  *Id.* at 21.

**Analysis**

The ALJ determined that Plaintiff – who was fifty-five years old on the date of the decision [Tr. 56] – is severely impaired by degenerative disc disease; status post right knee arthroscopy in 2005; degenerative joint disease in the right knee; mild left carpal tunnel syndrome and right ulnar neuropathy; diabetes mellitus; hypertension; atherosclerotic vascular disease; and, nicotine addiction [Tr. 13].  The ALJ also found that Plaintiff has been diagnosed with depression for which she is receiving medication from her primary care physician; this mental impairment, while severe, did not meet or medically equal the criteria of a listed mental impairment [Tr. 15].  Following his review of the medical, opinion, and other evidence of record and after finding that Plaintiff's subjective complaints were less than fully credible, the ALJ concluded that, despite her impairments, Plaintiff has the residual

functional capacity ("RFC")[2] to perform light work[3] as defined by specific Social Security regulations [Tr. 16].  Her ability, however, to perform at this exertional level is limited because she can only occasionally climb, balance, stoop, kneel, crouch, and crawl.  *Id.* Moreover, she is moderately limited in her ability to carry out simple and detailed instructions; to complete a normal workday without interruptions from psychologically based symptoms; and, to perform at a consistent pace.  *Id.*  Nonetheless, she has adequate social skills to respond appropriately to supervisors and co-workers on a routine basis without inappropriate behavior; she can interact appropriately with the general public; she is aware of basic hazards; she can adapt to a work environment; and, she can understand, remember, and carry out simple and complex work instructions in a work related environment.  *Id.*

**Dr. Jameson**

---

[2]Residual functional capacity "is the most [a claimant] can still do despite [a claimant's] limitations."  20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).

[3]Social Security regulations provide that

> [l]ight work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.  To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.  If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. §§ 404.1567(b), 416.967(b).

The question presented by Plaintiff in this first claim of error is whether "[t]he ALJ failed to apply the correct legal standard to evaluate and weigh the medical opinions of Plaintiff's treating orthopedic surgeon, Dr. Jameson." [Doc. No. 16, p. 12].   As the ALJ found:

> Claimant was injured on the job working as a housekeeper on September 30, 2004.   MRI of the right knee on October 25, 2004 showed minimal joint effusion, low grade partial tear, and mild degenerative joint disease.   She underwent arthroscopic surgery on February 2, 2005.   Postoperatively she received physical therapy and was released on April 6, 2005.

[Tr. 14].   With respect to the opinion provided by Plaintiff's surgeon on that release date, the ALJ concluded as follows:

> The claimant was seen by Dr. Bretton H. Jameson, M.D., on April 6, 2005, in connection with her worker's compensation claim.   Dr. Jameson noted the claimant's functional capacity evaluation seemed to indicate the claimant would be able to perform sedentary work with no lifting over 10 pounds.   Dr. James opined that these restrictions were "a little bit stringent, and I believe that the patient would be able to lift certainly twenty to thirty pounds on a regular basis.   The primary concern is going to be her functioning on her feet for long periods of time and this is going to cause pain secondary to her degenerative changes; therefore I believe that she would require a desk job but I do not believe this would restrict her from being able to lift heavy objects." (Exhibit 3F, page 1).   The Administrative Law Judge considered the opinion of Dr. Jameson, but assigned greater weight to the opinions of the non-examining State agency physicians.   Examinations by Dr. Brennan in October of 2008[4] and in November of 2008 revealed normal range of motion, symmetric reflexes, and no evidence of sensory loss.

[Tr. 20].

It is Plaintiff's contention that the ALJ "did not discuss any of Dr. Jameson's

---

[4]This examination was actually conducted in October, *2006* [Tr. 410 - 415].

treatment records and did not recognize his status as [Plaintiff's] treating orthopedic surgeon." [Doc. No. 16, p. 16]. She theorizes that "[i]nstead, the ALJ appears to have misapprehended the record and considered Dr. Jameson was merely a examining worker's compensation physician." *Id.* Accordingly, the argument continues, "the ALJ did not give Dr. Jameson's opinions the type of deference they were due as a treating physician and he did not evaluate and weigh his opinions under the treating physician rule. Instead he accorded greater weight to the opinions of non-examining reviewing physicians." *Id.*

Plaintiff further complains that the "ALJ disregarded the fact that the MRI exam results, the surgical records, and the records from the Functional Capacity Evaluation which were supportive of Dr. Jameson's opinion were not in the record" and "also disregarded the fact that Dr. Jameson's opinions were further supported by the May 2005 report of examining physician Dr. Metcalf . . . and the vocational evaluation of [Plaintiff] in August 2005 which notes that the FCE report showed [Plaintiff] was limited to sedentary work." *Id.* at 16 - 17. She concludes by arguing that "the ALJ had a heightened duty to assure the record was fully developed since [Plaintiff] was represented by a non-attorney. Given his failure to obtain or discuss these missing records, the record does not justify rejection of Dr. Jameson's opinions." *Id.* at 17.

Under the law of the Tenth Circuit, "[a]ccording to what has come to be known as the treating physician rule, the Commissioner will generally give more weight to  medical opinions from treating sources than those from non-treating sources." *Langley v. Barnhart,* 373 F.3d 1116, 1119 (10th Cir. 2004). A sequential analysis must be undertaken by an ALJ

when considering a treating source medical opinion which relates to the nature and severity of a claimant's impairments. *Watkins v. Barnhart,* 350 F.3d 1297, 1300 (10th Cir. 2003). The first step, pursuant to Social Security Ruling ("SSR") 96-2p, 1996 WL 374188, at *2, is to determine whether the opinion is well-supported by medically acceptable techniques. *Watkins,* 350 F.3d at 1300.  At the second step, adjudicators are instructed that "[e]ven if well-supported by medically acceptable clinical and laboratory diagnostic techniques, the treating source's medical opinion also must be 'not inconsistent' with the other 'substantial evidence' in the individual's case record."  SSR 96-2p, 1996 WL 374188, at *2.  If both of these factors are satisfied with regard to a medical opinion from a treating source, "the adjudicator must adopt a treating source's medical opinion irrespective of any finding he or she would have made in the absence of the medical opinion."  *Id.*  If, on the other hand, "the opinion is deficient in either of these respects, then it is not entitled to controlling weight." *Watkins,* 350 F.3d at 1300.

Once the ALJ determines that a treating source opinion is not entitled to controlling weight, he must consider the weight he does give to such opinion "using all of the factors provided in 20 C.F.R. § 404.1527 and 416.927.'" *Id*.  "Those factors are: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other

8

factors brought to the ALJ's attention which tend to support or contradict the opinion." *Id.* at 1300-1301.   If he rejects the opinion completely, the ALJ must offer specific and legitimate reasons for so doing.   *Id.*;   *Miller v. Chater,* 99 F.3d 972, 976 (10th Cir. 1996).

Here, the ALJ found that Dr. Jameson's opinion was inconsistent with other specific evidence of record – thereby precluding controlling weight – and  proceeded through the process to consider what weight he did give the opinion [Tr. 20].   At the next stage of the process he accorded greater weight to the opinions of the non-examining State agency physicians, citing to specific evidence from consultative examinations conducted in 2008, evidence which was relied upon by those State agency physicians in formulating their opinions.[5]   In assigning greater weight to the opinions of the State agency physicians with regard to Plaintiff's exertional abilities, the ALJ focused on the consistency between Dr. Jameson's opinion and the record as a whole.[6]   "This . . . satisfies the requirement that the ALJ's decision be 'sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.'" *Oldham v. Astrue,* 509 F.3d 1254, 1258 (10th Cir. 2007) (citation omitted).

As to Plaintiff's specific arguments, the undersigned is unaware of any requirement

---

[5]In this first claim of error, Plaintiff asserts legal error only and does not challenge the legitimacy of the specific evidence cited by the ALJ.  Rather, she simply acknowledges that "the ALJ did point to the 2008 findings suggesting they were inconsistent with Dr. Jameson's opinion regarding the nature of the impairment." [Tr. 16].  Without a supported assertion by Plaintiff that this evidence is not well-supported, the court has nothing to review.

[6]The ALJ is not required to expressly discuss or apply each factor.  *Oldham v. Astrue,* 509 F.3d 1254, 1258 (10th Cir. 2007).

that the ALJ specifically denote a medical source as a "treating physician" so long as it is

clear – as it is here – that the treating physician rule was followed.  Plaintiff only speculates

when she argues that the ALJ "considered Dr. Jameson [to be] merely an examining worker's

compensation physician." [Doc. No. 16, p. 16].[7]

Plaintiff's claim that the "ALJ disregarded the fact that the MRI exam results, the

surgical records, and the records from the Functional Capacity Evaluation which were

supportive of Dr. Jameson's opinion were not in the record" is equally unavailing.[8]  *Id.*  The

ALJ's decision reflects the results of the MRI as interpreted by Dr. Jameson [Tr. 14 and 367];

likewise, the ALJ credited Dr. Jameson's reading of the functional capacity evaluation [Tr.

20].  As to Dr. Jameson's "surgical records," there is, once again, no question that Plaintiff

had a surgical procedure [Tr. 363 - 364] and nothing in the decision to suggest that the ALJ's

assessment of Dr. Jameson's opinion would have been impacted had the record of the actual

procedure been available.[9]

Plaintiff's final contention in support of her claim that the ALJ's assessment of Dr.

---

[7]The ALJ's statement that Plaintiff "was seen by Dr. Bretton H. Jameson, M.D., on April 5, 2005, in connection with her worker's compensation claim" is entirely accurate [Tr. 20].  On that date, Dr. Jameson  reported his findings to the insurance carrier who provided worker's compensation coverage for Plaintiff's employer, Dinacor, and he saw Plaintiff in connection with that claim [Tr. 360 - 361].

[8]Plaintiff – who was represented by counsel until August 5, 2009 [Tr. 95] – argues that because she was represented by a non-attorney at her October 20, 2009, administrative hearing, the ALJ had a heightened duty to develop the record [Doc. No. 16, p. 3].

[9]It is worth noting that there is no indication from the transcript of the administrative hearing that either Plaintiff or her representative requested the assistance of the ALJ in locating any records.

Jameson's opinion was legally violative of the treating physician rule is that the ALJ "also disregarded the fact that Dr. Jameson's opinions were further supported by the May 2005 report of examining physician Dr. Metcalf . . . and the vocational evaluation of [Plaintiff] in August 2005 which notes that the FCE report showed [Plaintiff] was limited to sedentary work." [Doc. No. 16, pp. 16 - 17]. A review of the ALJ's decision reveals that the ALJ recognized that Dr. Metcalf saw Plaintiff in late May of 2005 in conjunction with her worker's compensation clam [Tr. 20]. The ALJ further recognized that Dr. Metcalf opined that Plaintiff would require a sedentary job. *Id.* In his evaluation of Dr. Metcalf's medical source opinion, the ALJ gave greater weight to the opinions of the non-examining State agency physicians "who had an opportunity to view that longitudinal record," *id.,* or, in other words, to view the progress of Plaintiff's knee beyond the period shortly after her surgery when her worker's compensation claim was open. As to any claimed error due to the ALJ's "disregard[]" of " the vocational evaluation of [Plaintiff] in August 2005 which notes that the FCE report showed [Plaintiff] was limited to sedentary work" [Doc. No. 16, pp. 16 - 17], Plaintiff fails to explain how this was error when the ALJ had already repeated the results of the functional capacity evaluation [Tr. 20].

Plaintiff has failed to establish that the ALJ committed any legal error in his evaluation of Dr. Jameson's treating physician opinion.

**RFC Assessment**

The issue presented here is whether "[t]he ALJ's RFC assessment is contrary to law, not supported by substantial evidence, and otherwise internally inconsistent." [Doc. No. 16,

p. 17]. With regard to her challenge to the physical limitations assessed by the ALJ – light work with only occasional climbing, balancing, stooping, kneeling, crouching, and crawling [Tr. 16] – Plaintiff repeats her arguments from her first claim of error: that Drs. Jameson, Metcalf, and the results of a functional capacity evaluation limit Plaintiff to sedentary work and that "[t]he ALJ's failure to develop the record and his failure to apply the treating physician rule to his analysis renders his phase one RFC determination regarding [Plaintiff's] physical limitations as not supported by substantial evidence as a matter of law." [Doc. No. 16, p. 18]. Because the undersigned has previously determined that the ALJ committed no error in this regard and because Plaintiff has asserted no new argument in the context of her second claim of error, no additional findings are necessary with regard to Plaintiff's challenge to the physical limitations established by the ALJ in his assessment of Plaintiff's RFC.

As to Plaintiff's mental RFC as assessed by the ALJ – moderately limited in her ability to carry out simple and detailed instructions as well as in her ability to complete a normal workday without psychologically based symptoms and to perform at a consistent pace; able to respond appropriately to supervisors and co-workers; able to interact appropriately with the general public; is aware of basic hazards; able to adapt to a work environment; and, able to understand, remember, and carry out simple and complex work instructions in a work related environment [Tr. 16] – Plaintiff maintains that it "is also flawed because it is internally inconsistent and conflicts with [the ALJ's] PRT findings." [Doc. No. 16, p. 18]. Specifically, it is Plaintiff's position that the ALJ's finding that Plaintiff could

understand, remember, and carry out simple and complex work instructions in a work related environment even though she had moderate limitations in her ability to perform simple and complex tasks "suggests that the ALJ concluded that a moderate limitation was no limitation at all." *Id.* at 18 - 19.

Contrary to Plaintiff's suggestion, the ALJ's mental RFC was derived [Tr. 16] from the opinions of State agency consultant Sally Varghese, M.D. [Tr. 534 - 551] as well as from [Tr. 15] the opinions of Robert Danaher, Psy.D., the examining clinical psychologist [Tr. 523 - 529]. On mental status examination, Dr. Danaher noted that Plaintiff's "[s]ustained attention and concentration capabilities were assessed through asking the patient to count backwards from 100 subtracting by 3's. When asked to perform this task she attempted to follow the instructions though was unable to do so. Her difficulties appeared to be due to problems with attention and concentration." [Tr. 527]. Nonetheless, Dr. Danaher specifically found that "[t]his individual's ability to understand, remember and carry out simple and complex instructions in a work related environment would be rated as adequate." [Tr. 529].

In completing her Mental Residual Functional Capacity Assessment, Dr. Varghese interpreted the results of Dr. Danaher's examination in the following manner:

> The claimant is sustained on medication. The MSE indicates that her ability to carry out simple and detailed instructions is moderately limited, this appears to be due to problems with attention and concentration. Her ability to complete a normal workday w/o interruptions from psychological based symptoms and to perform at a moderate pace is moderately limited. She has adequate social skills to respond appropriately to supervisors and co-workers on a routine basis w/o inappropriate behavior. She has the ability to interact appropriately with the general public and is aware of basic hazards. She can adapt to work environment. She has the ability to understand, remember, and

carry out simple and complex work instructions in a work related environment.

[Tr. 550]. Thus, the medical evidence of record plainly establishes that despite deficiencies

in attention and concentration, Plaintiff retained the ability to understand, remember, and

carry out simple and complex work instructions in a work related environment.  The ALJ

properly relied [Tr. 15 and 16] upon this uncontroverted medical evidence in making his RFC

assessment and did not, as Plaintiff speculates, "conclude[] that a moderate limitation was

no limitation at all."  [Doc. No. 16, pp. 18 - 19].

## Past Relevant Work

Here, Plaintiff alleges that "[t]he ALJ failed to make the legally required findings

regarding the demands of Plaintiff's past relevant work and to make the type of function by

function analysis on the record the law requires." [Doc. No. 16, p. 21]. Plaintiff relies on the

Tenth Circuit's decision in *Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996), where

the court explained that:

> [s]tep four of the sequential analysis, at which the ALJ found [the claimant]
> not disabled, is comprised of three phases. In the first phase,[10] the ALJ must
> evaluate a claimant's physical and mental residual functional capacity (RFC),
> *see* SSR 86-8, Soc. Sec. Rep. Serv., Rulings 1983-1991, 423, 427 (West 1992),
> and in the second phase, he must determine the physical and mental demands
> of the claimant's past relevant work. 20 C.F.R. § 404.1520(e). In the final
> phase, the ALJ determines whether the claimant has the ability to meet the job
> demands found in phase two despite the mental and/or physical limitations
> found in phase one. *See* SSR 82-62, Soc. Sec. Rep. Serv., Rulings 1975-1982,

---

[10]In this third claim of error, Plaintiff maintains that regardless of whether "the ALJ's
phase one RFC findings were justified, he still failed to make the required phase two findings
regarding the physical and mental demands of [Plaintiff's] past work and failed perform the
legally required function-by-function phase three analysis." [Doc. No 16, p. 22].

> 809; *Henrie v. United States Dep't of Health & Human Servs.*, 13 F.3d 359,
> 361 (10th Cir.1993). At each of these phases, the ALJ must make specific
> findings. *See Henrie*, 13 F.3d at 361.

*Id.* Thus, although it remains Plaintiff's burden at step four to prove her inability to return to her particular former job and to her former occupation as that occupation is generally performed throughout the national economy, *see Andrade v. Secretary of Health and Human Services*, 985 F.2d 1045, 1051 (10th Cir. 1993), the administrative law judge has a duty "of inquiry and factual development." *Henrie,*13 F.3d at 361.

At the administrative hearing the ALJ asked the vocational expert ("VE") to identify and classify the work Plaintiff had performed over the past fifteen years [Tr. 51]. The VE stated that "[t]he work that has been testified to is a housekeeper, that's light in physical demand and unskilled. There was evidence in the file of a cashier, checker." *Id.* He further testified that "[t]here were two examples of that, light in physical demand and semi-skilled . . .[a]nd there was testimony that had been a deli manager, that work is light in physical demand and skilled . . . ." *Id.*

The ALJ then asked the VE to assume an individual who was of the same age, education, and work experience as Plaintiff; to assume the individual could work at the light exertional level as that term is defined by the *Dictionary of Occupational Titles,* the Department of Labor, and by the Commissioner of the Social Security Administration; to assume the individual had postural limitations permitting no more than occasional climbing, balancing, stooping, kneeling, crouching, and crawling; to assume, that due to problems with attention and concentration, the individual was moderately limited in the ability to carry out

15

simple and detailed instructions; to assume the individual's ability to complete a normal

workday without interruptions from psychologically based symptoms and to perform  at a

consistent pace is moderately limited; to assume the individual has adequate social skills to

respond appropriately to supervisors and co-workers on a routine basis without inappropriate

behavior; to assume the individual has the ability to interact appropriately with the general

public; to assume the individual is aware of basic hazards; to assume the individual can adapt

to a work environment; and, to assume the individual has the ability to understand,

remember, and carry out simple and complex work instructions in a work related

environment [Tr. 52 - 53].  When asked by the ALJ whether an individual with these

limitations could perform any of Plaintiff's past work "either as the claimant performed it or

as it's generally performed in the national economy,"[11] the VE testified that the work as a

---

[11]Of the three tests to determine whether or not a claimant retains the capacity to perform her past relevant work, the third  is "[w]hether the claimant retains the capacity to perform the functional demands and job duties of the job as ordinarily required by employers throughout the national economy."  Social Security Ruling 82-61, 1982 WL 31387, at * 2. The ruling provides that the *Dictionary of Occupational Titles* may be used to define the job as it is customarily performed in the national economy, but "[i]t is understood that some individual jobs may require somewhat more or less exertion than the DOT description."  The ruling explains that:

> [a] former job performed in by the claimant may have involved functional demands and job duties significantly in excess of those generally required for the job by other employers throughout the national economy.  Under this test, if the claimant cannot perform the excessive functional demands and/or job duties actually required in the former job but can perform the functional demands and job duties as generally required by employers throughout the economy, the claimant should be found to be "not disabled."

(continued...)

housekeeper and as a cashier, checker could be performed [Tr. 53 - 54].

Thus, and focusing on Plaintiff's past work as a housekeeper,[12] the ALJ asked the VE about both the physical and mental demands of this particular work; he determined that it was unskilled and light as light is specifically defined by Social Security regulations; and, he referenced that testimony in his decision [Tr. 21].  The ALJ also asked the VE whether an individual "with the residual functional capacity identified for the claimant" – an RFC set out in the ALJ's decision [Tr. 16] – could perform the work of a housekeeper, and, as the ALJ stated in his decision, "[t]he vocational witness testified that an individual with the vocational profile identified for the claimant could perform the position of housekeeper[.]" [Doc. No. 22].  The ALJ further found that "[t]he testimony of the vocational expert is credible, persuasive, and consistent with the Dictionary of Occupational Titles (Social Security Ruling 00-4p)" [Tr. 22].  Finally, the ALJ specifically found that "[i]n comparing the claimant's residual functional capacity with the physical and mental demands of this work, the undersigned finds that the claimant is able to perform it as actually and generally performed." *Id.*

The ALJ committed no error in this regard.  He "did not delegate the analysis to the

---

[11](...continued)
*Id.*

[12]*See* DICOT 323.687-014, 1991 WL 672783. This position is performed at the light work level, requires "commonsense understanding to carry out simple one- or two-step instructions," and has a specific vocational preparation level of "[a]nything beyond short demonstration up to and including 1 month." *Id.*  Climbing, balancing, and crawling are not required and stooping, kneeling, and crouching are required occasionally.  *Id.*

17

vocational expert; instead he quoted the VE's testimony approvingly, in support of his own findings at phases two and three of the analysis." *Doyal v. Barnhart,* 331 F.3d 758, 761 (10th Cir. 2003).  "There was nothing improper about this.  An 'ALJ may rely on information supplied by the VE at step four.'" *Id.* (quoting *Winfrey v. Chater,* 92 F.3d 1017, 1025 (10th Cir. 1996).

In her reply brief, Plaintiff states that "the Commissioner argues that the ALJ can rely on vocational testimony to obtain information about the demands of a claimant's past relevant work.  We do not dispute that general rule." [Doc. No. 20, p. 8].  What Plaintiff takes issue with is the ALJ's alleged failure to "develop the record regarding the specific mental demands of past work where he finds a claimant has mental limitations."  *Id.* at 8 - 9.  She maintains that "[a] finding regarding the skill level of a job does not substitute for findings regarding specific mental limitations.  SSR 85-15."  *Id.* at 9.

The undisputed medical evidence in this case established that Plaintiff retained "[t]he basic mental demands of competitive, remunerative, unskilled work" in that she retained the ability "to understand, carry out, and remember simple instructions; to respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a routine work setting."  Social Security Ruling 85-15, 1985 WL 56857, at *4.  The vocational expert's testimony established that Plaintiff's past relevant work as a housekeeper, either as she performed it or as it is generally performed, did not exceed these demands.  The ALJ committed no error in this regard.

18

## **RECOMMENDATION AND NOTICE OF RIGHT TO OBJECT**

For the foregoing reasons, the undersigned recommends that the Commissioner's decision be affirmed.  The parties are advised of their right to object to this Report and Recommendation by the 5th day of March, 2012,  in accordance with 28 U.S.C. §636 and Fed. R. Civ. P. 72.  The parties are further advised that failure to make timely objection to this Report and Recommendation waives their right to appellate review of both factual and legal issues contained herein.  *Moore v. United States*, 950 F.2d 656 (10th Cir. 1991).

This Report and Recommendation disposes of all issues referred to the Magistrate Judge in this matter.

ENTERED this 13th day of February, 2012.


BANA ROBERTS
UNITED STATES MAGISTRATE JUDGE